**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Nicole Bokanoski,

Plaintiff,

v.

Commissioner of Social Security Administration,

Defendant.

No. CV-25-00462-TUC-JAS

**ORDER**

On June 17, 2026, Magistrate Judge Jacqueline Rateau issued a Report and Recommendation ("R&R"), recommending that the Court dismiss Plaintiff Nicole Bokanoski's Complaint. (Doc. 22 at 1.) Bokanoski filed an objection (Doc. 23) and the Commissioner filed a response (Doc. 24). Having reviewed the objections, responses, and upon de novo review of the issues raised, the Court adopts the recommendation of the Magistrate Judge, affirms the Administrative Law Judge's ("ALJ") decision, and dismisses the Complaint.

## I. Standard of Review

### *a. R&R*

The standard of review of a magistrate judge's R&R is dependent upon whether a party objects: where there is no objection to a magistrate's factual or legal determinations, the district court need not review the decision "under a *de novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). However, when a party objects, the district court must "determine de novo any part of the magistrate judge's disposition that has been

properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). Moreover, "while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154.

With no objection to the Magistrate Judge's factual and procedural background or the summary of the ALJ's decision (*see* Doc. 23; Doc. 22 at 1-5), the Court adopts these facts, only summarizing as necessary to address Bokanoski's objections.

***b. ALJ's Decision***

An ALJ's determination will be affirmed unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). Substantial evidence is more than a scintilla—it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

An ALJ determines whether a claimant is disabled through a five-step sequential evaluation. 20 C.F.R. §§ 404.1520, 416.920. A claimant must show: (1) she has not performed substantial gainful activity since the alleged disability onset date ("step one"); (2) she has a severe impairment ("step two"); and (3) her severe impairment meets or equals a listed impairment ("step three"). *Id.* "If the claimant satisfies these three steps, then the claimant is disabled and entitled to benefits." *Dominguez v. Colvin*, 808 F.3d 403, 405 (9th Cir. 2015), *as amended* (Feb. 5, 2016). If the severe impairment "does not meet or equal the severity of one of the ailments listed[,] . . . the ALJ then proceeds to step four, which requires the ALJ to determine the claimant's residual functioning capacity (RFC)." *Id.* The RFC is "defined as the most that a claimant can do despite physical and mental limitations caused by his impairments and related symptoms." *Stefanie S. v. Kijakazi*, No. 20-CV-1134-RBM, 2022 WL 594547, at *4 (S.D. Cal. Feb. 25, 2022) (quoting *Zavalin v. Colvin*,

778 F.3d 842, 845 (9th Cir. 2015)). The RFC considers "all the relevant evidence in the record, including impairments not classified as 'severe.'" *Dominguez*, 808 F.3d at 405.

"After developing the RFC, the ALJ must determine whether the claimant can perform past relevant work." *Id.* If performing past relevant work is not feasible, at step five "the government has the burden of showing that the claimant could perform other work existing in significant numbers in the national economy given the claimant's RFC, age, education, and work experience." *Id.*; 20 C.F.R. §§ 404.1520, 416.920.

**I. ALJ's Decision**

As relevant here, at step two the ALJ determined that Bokanoski's Ehlers-Danlos syndrome (EDS)[1] and occipital neuralgia were severe impairments. (AR 20.) The ALJ explained that Bokanoski's "allegations of myositis, chronic fatigue syndrome, and post-concussion syndrome are not medically determinable." (*Id.*) The ALJ also found Bokanoski's "asthma, postural orthostatic tachycardia syndrome ('POTS'), and irritable bowel syndrome ('IBS') do not cause more than minimal functional limitations" and therefore were not severe. (*Id.*) Moreover, the ALJ concluded that Bokanoski's "major depressive disorder, generalized anxiety disorder, and attention deficit/hyperactivity disorder ('ADHD')" were not severe because there was "minimal limitation in her ability to perform basic mental work activities." (AR 20-21.)

At step three, the ALJ found the impairments did not meet or equal the severity of the listed impairments. (AR 22-23.) First, the ALJ stated that Bokanoski's EDS did not meet either section 1.00 ("musculoskeletal disorders") or 14.06 ("undifferentiated and mixed connective tissue disease"), both because the symptoms were not severe enough, but also because the symptoms did not fit the parameters of the listings. (*Id.*) Furthermore, the ALJ determined that Bokanoski's occipital neuralgia symptoms were not frequent enough to meet listing 11.02. (AR 23.)

The ALJ determined Plaintiff's RFC included light work except "never climbing

---

[1] Bokanoski explains that EDS "predisposes individuals to injury due to faulty collagen affecting connective tissues, leading to joint hypermobility, instability, fragile skin, and easy bruising." (Doc. 21 at 2-3.)

ladders, ropes, or scaffolds; occasionally climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; and avoiding all exposure to hazards (e.g., machinery, heights, etc.)." (*Id.*) The ALJ observed that the RFC was supported by Bokanoski's subjective testimony, which "generally reflected only periodic instances of heightened symptomology and otherwise unremarkable medical findings," and the opinions of the state agency's medical consultants. (AR 26.)

The ALJ acknowledged that Bokanoski claimed she was "unable to work prior jobs involving heavier exertional activity due to chronic pain secondary to hypermobility, which increases her risk for musculoskeletal injury," and that she believed "she would be able to walk for only 20 minutes at a time or stand for only 10 minutes at a time." (AR 24.) However, the ALJ found that Bokanoski's subjective symptom testimony was inconsistent with the record evidence. (*Id.*) The ALJ noted the pain secondary to the EDS caused only mild functional limitations that did not last for prolonged periods. (*Id.*) In addition, the ALJ said, "despite her providers' frequent advice to engage in regular exercise, and despite her having learned and seen symptomatic improvement with home exercises through physical therapy, the claimant admitted during her hearing testimony that she does not exercise beyond occasional, short walks." (*Id.*) The ALJ also indicated the EDS symptoms were not functionally limiting on a constant basis. (*Id.*)

In determining the RFC, the ALJ conceded that physical activity above light work would create a risk of further musculoskeletal injury, but that Bokanoski could perform *some* prolonged activity given "the irregularity with which she experiences injuries subsequent to hypermobility—as well as the speedy improvement achieved with conservative treatment methods alone." (*Id.*) The ALJ concluded that the RFC was supported by the opinions of medical consultants Drs. Margaret Brummer and Marta Madera-Ruiz, though the ALJ believed Dr. Brummer's assessment did not adequately consider Bokanoski's EDS and should have included "greater postural limitations." (AR 25.) Moreover, Bokanoski's ability to help a friend with yardwork in the summer of 2024 further supported that she could perform some prolonged activity, the ALJ concluded. (AR 24.)

At step four, the ALJ determined that Bokanoski could perform her past relevant "work as a park ranger or as a customer service representative." (AR 26.) In an alternative finding at step five, the ALJ concluded that given Bokanoski's "age, education, work experience," and the RFC's limitations, there was significant work she could perform in the national economy. (AR 28.) Therefore, the ALJ determined that Bokanoski was not disabled. (*Id.*)

**II. Magistrate Judge's R&R**

On appeal, Bokanoski argued the ALJ "fail[ed] to take into account the debilitating effects of Plaintiff's" EDS symptoms,[2] and instead erroneously considered the symptoms individually and determined they were non-severe. (Doc. 19 at 3.) Bokanoski also argued that contrary to the holding of *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998), the ALJ here "accounted only for the musculoskeletal injuries" and "fail[ed] to account for the non-exertional limitations" of her EDS when including "some prolonged exertional activity" in the RFC. (*Id.* at 10-11.)

In addition, Bokanoski claimed the ALJ erroneously discredited her symptom testimony by requiring constant functional limitations, rather than considering the "waxing and waning nature of her severe [medically determinable impairment]." (*Id.* at 9.) Bokanoski argued that the Magistrate Judge should extend the holding in *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014), to physical health symptoms. (*Id.* at 11.) *Garrison* prohibits an ALJ from rejecting a claimant's mental health testimony simply because there are periods in which the claimant's symptoms fluctuate. 759 F.3d at 1016-17.

The Magistrate Judge determined that *Reddick* was inapposite because the ALJ considered both musculoskeletal and non-exertional limitations, including Bokanoski's "fatigue, ADHD, and myositis," but concluded that the limitations were "either not medi[c]ally determinable or not serious." (Doc. 22 at 7 (citing AR 20-24).) Regardless, the Magistrate concluded Bokanoski had waived this argument by not raising it in her opening

[2] Bokanoski states that key symptoms of EDS include "chronic pain, fatigue, autonomic POTS, GI issues, . . . symptom flares," as well as "cognitive disfunction, dysautonomia, abdominal hernias, and gastrointestinal, respiratory, and immune dysfunction. (Doc. 19 at 2-3.)

brief. (*Id.* at 7 (citing *Avenetti v. Barnhart*, 456 F.3d 1122, 1124-25 (9th Cir. 2006).)

The Magistrate Judge agreed with the ALJ that the inclusion of some sustained exertional activity in the RFC was supported by substantial record evidence. (*Id.* at 6.) The Magistrate stated the RFC appropriately restricted activity to light work but allowed for limited prolonged activity given (1) the "irregularity with which she experiences injuries subsequent to hypermobility," and (2) her quick recovery after conservative treatment. (*Id.*) In addition, the Magistrate reiterated that it was permissible for the ALJ to discount Bokanoski's symptom testimony based on her failure to engage in regular exercise despite doctors' recommendations. (*Id.* at 7 (first citing AR 24; then citing *Silva v. Comm'r Soc. Sec. Admin.*, 2018 WL 3342898, at *6 (July 9, 2018).) Insofar as Bokanoski was claiming the ALJ erred by not considering the Program Operations Manual System ("POMS") guideline 02410.004, the Magistrate noted that consideration of POMS was instructive but not mandatory. (*Id.* at 7-8 (quoting *Carillo-Yeras v. Astrue*, 671 F.3d 731, 735 (9th Cir. 2011).)

Furthermore, the Magistrate Judge stated that even if the Court applied the conclusion in *Garrison*—that an ALJ cannot "reject a claimant's testimony *merely* because symptoms wax and wane in the course of treatment"—rejecting Bokanoski's symptom testimony was permissible because the ALJ found *not only* that the symptoms waxed and waned, but that she did not engage in "beneficial and recommended physical therapy." (*Id.* at 8 (citing *Silva*, 2018 WL 3342898, at *6).) Therefore, the Magistrate concluded the ALJ's RFC was not in error and recommended that this Court dismiss the Complaint. (*Id.* at 9.)

**III. Plaintiff's Objection**

As a preliminary matter, the Court agrees with the Magistrate Judge that by not developing it in the Opening Brief, Bokanoski waived argument regarding the ALJ's clear and convincing reasons for discounting her subjective symptom testimony. *See Avenetti*, 456 F.3d at 1125. Regardless, her claim is non-meritorious because the Magistrate did not err in finding the ALJ's RFC is supported by substantial evidence.

First, Bokanoski challenges the ALJ's determination that claimant could perform

light work "simply because her frequent musculoskeletal injuries 'improved with conservative treatment.'" (Doc. 23 at 4.) The Court is unpersuaded. "An ALJ may properly rely on a claimant's documented improvement and pursuit of only conservative treatment as a basis for rejecting the claimant's symptom testimony." *Baca v. Comm'r Soc. Sec. Admin.*, No. CV-20-00608-PHX-DWL, 2021 WL 1827232, at *6 (D. Ariz. May 7, 2021) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008)); *Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." (alteration in original) (quoting *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007))).

Second, Bokanoski claims that just because a particular injury "temporarily resolves [with conservative treatment] does not mean the underlying systemic vulnerability has been cured." (Doc. 23 at 4.) However, the ALJ did not suggest the underlying vulnerabilities had resolved. Rather, the ALJ stated that the symptoms of the EDS could be handled relatively swiftly with conservative treatment, and the frequency of injury and rapid improvement of symptoms allowed for light work. (Doc. 22 at 6 (citing AR 24).) This is not error.

Third, Bokanoski objects to the ALJ's discounting of her testimony because she believes the recommendation of regular exercise was not substantially supported by the record. (Doc. 23 at 4-5.) Bokanoski notes that the ALJ even cited to one health care provider's recommendation that frequent exercise may exacerbate pain. (*Id.* at 5.) When determining a claimant's RFC, an ALJ evaluates the claimant's subjective symptom testimony in comparison with the medical record and course of treatment, and must provide clear and convincing reasons for discounting the testimony. *Smartt*, 53 F.4th at 494. The Court concludes the ALJ provided more than a mere scintilla of evidence supporting that exercise helped Bokanoski's symptoms and "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679; *see e.g.*, AR 352 (recommending "regular exercise with strength training"); AR 715 ("Giving encouragement to exercise"); AR 1051 (noting ankle pain was "relieved by mobility and OTC medicines"); AR 1061 (noting knee pain was aggravated by increased

activity but is "relieved by brace/splint and OTC medicines (acetaminophen)"); AR 1167 (pain at 0/10); AR 1463 (pain at 0/10); AR 1435 (knee injury in July 2024 treated with OTC medication, salves, and creams); AR 1502 (back pain treatment included Tylenol, heat, and movement). Furthermore, the health care provider that the ALJ cited to noted that EDS can cause pain, but still prescribed that Bokanoski "[d]o exercises when able." (AR 1037.) Therefore, the ALJ's finding that exercise was recommended was substantially supported.

Fourth, Bokanoski claims that under *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010), with a "chronic, incurable condition" such as EDS, she "cannot be penalized for receiving conservative treatment when no more aggressive treatment options are medically available or recommended." (Doc. 23 at 6.) However, the ALJ did not penalize her for receiving conservative treatment, rather the ALJ explained that conservative treatment was successful in regulating Bokanoski's pain. The ALJ cited medical records showing that Bokanoski's symptoms improved quickly with conservative treatment—including movement, pain medication, heat, stretches, and splints. (AR 24.) The ALJ also pointed out that Bokanoski was not regularly engaging in the recommended exercise, even when she was able and despite the recommendations that exercise would be beneficial. (*Id.*) Further, the ALJ pointed out that Bokanoski could participate in yardwork, further supporting capacity for some prolonged activity. (*Id.*) And while Bokanoski alleges she should not be punished for failing to attend physical therapy due to financial constraints (Doc. 23 at 6), this failure was not the basis for the ALJ's decision. Rather, Bokanoski's treatment history and rapid improvement rationally support the conclusion that Bokansoski's conditions, while symptomatic, were not as functionally limiting as she alleged and allowed for light, sustained work. *See Smartt*, 53 F.4th at 500 (affirming the rejection of symptom testimony based on conservative treatment in the form of pain medication and physical therapy).

Fifth, Bokanoski alleges that the ALJ committed reversible error by requiring her to have constant limitations without accounting for the fluctuating nature of her EDS. (Doc. 23 at 7-8.) Bokanoski insists that the ALJ needed to evaluate what she could do on a

sustained basis, not the most she could do on a good day. (*Id.* at 7.) She asserts that prolonged exertion would trigger her to re-injure herself, preventing her from sustained work. (*Id.* at 7-8.) But the Court agrees with the Magistrate Judge, the ALJ appropriately limited Bokanoski's RFC to light work (to minimize potential injury) based on the fluctuating nature of Bokanoski's symptoms and the short recovery time with conservative treatment. (Doc. 22 at 6.) This finding considered the fluctuating nature of her symptoms.

Finally, Bokanoski claims "[t]he ALJ committed a reversible error of law by failing to distinguish between the clinical manifestations of Plaintiff's severe [medically determinable impairments] and separate, non-severe conditions," including "chronic fatigue, cognitive deficit, and dizziness." (Doc. 23 at 8-9.) Bokanoski asserts that the ALJ did not consider the "compounding impact" of her ailments related to EDS. (*Id.* at 9.)

Bokanoski has not demonstrated that a collaborative assessment would have led to a different result than independent consideration. *See Buck v. Berryhill*, 869 F.3d 1040, 1048 49 (9th Cir. 2017) ("[I]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." (internal citation omitted)). The Court agrees with the Magistrate Judge, the ALJ considered all of Bokanoski's symptoms, including fatigue, ADHD, POTS, dizziness, and syncope. (*See* Doc. 22 at 7 (citing AR 20-24).) As to Bokanoski's reports of fatigue (AR 352, 577, 624, 916, 1249, 1456, 1467), the ALJ indicated it was "not medically determinable," "was rare throughout the record (if, indeed, there was any at all)," and that "there did not appear to be any objective evidence supporting the existence of such impairments." (AR 20.) For Bokanoski's allegations of major depressive disorder, generalized anxiety disorder and ADHD, as well as her cognitive and social limitations, the ALJ found these "mental impairments do not cause more than minimal limitation in her ability to perform basic mental work activities." (AR 20-22.) Finally, the ALJ cited substantial evidence supporting the conclusion that Bokanoski's dizziness was intermittent, and she often did not report experiencing syncope. (AR 20.)

Here substantial evidence supports the ALJ's RFC determination, and because the "evidence is susceptible to more than one rational interpretation," the Court must affirm the ALJ's decision. *See Burch*, 400 F.3d at 679. The ALJ considered the functional limitations of Bokanoski's EDS, as well as other mental, physical, and non-exertional limitations. Simply because they were not included in the same evaluation does not mean the RFC was not appropriate.

Accordingly, **IT IS ORDERED**:

1) Magistrate Judge Jacqueline M. Rateau's Report and Recommendation is ADOPTED. (Doc. 22.)
2) The Administrative Law Judge's final decision is AFFIRMED.
3) This matter is DISMISSED. The Clerk of Court shall docket accordingly and close the case file in this matter.

Dated this 28th day of September, 2026.

Honorable James A. Soto
United States District Judge